UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America ) | Criminal Action No.: 4:18-cr-00772-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| James Latron Sumter, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This criminal case is before the Court on Defendant James Latron Sumter's motion to withdraw guilty plea. ECF No. 73. For the reasons that follow, the Court denies Sumter's motion to withdraw guilty plea.

**Background**

On July 16, 2018, a criminal complaint was filed charging Sumter with conspiracy to possess with intent to distribute and to distribute cocaine and heroin in violation of 21 U.S.C. § 846. ECF No. 3. On July 18, 2018, at Sumter's initial appearance, the Court appointed attorney Nicholas Lewis ("plea counsel") to represent Sumter. ECF No. 11.

On August 15, 2018, a federal grand jury indicted Sumter in a single-count indictment for conspiracy to possess with intent to distribute and to distribute a quantity of cocaine and a quantity of heroin with death and serious bodily injury resulting from use of said substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. ECF No. 26. The same day, the Government filed notice pursuant to 21 U.S.C. § 851 that Sumter was subject to enhanced penalties based on a 2011 conviction for "Manufacture, Possession of other Controlled Substance in Schedule I, II, II, with Intent to Distribute." ECF No. 30. Given the 2011 felony, if Sumter was found guilty of the offense charged

1

in the indictment, he faced mandatory life imprisonment.  ECF No. 28; 21 U.S.C. § 841(b)(1)(C).

The Government made three plea offers to Sumter.  The first offer, made on September 25, 2018, was based upon the mandatory life sentence, but contained a cooperation provision allowing Sumter the opportunity to earn time off his sentence.  ECF No. 95 at 3.  The second offer was based on a penalty of twenty years to life imprisonment (the penalty applicable to the crime on which Sumter was indicted if there was no previous felony).  *Id.* at 4; 21 U.S.C. § 841(b)(1)(C).  Under the second offer, made November 27, 2018, the Government agreed to withdraw the enhanced penalty applicable under 21 U.S.C. § 851; the second offer also provided Sumter the ability to earn time off his sentence by cooperating.  ECF No. 95 at 4.  Sumter was to decide by the pretrial conference on December 3, 2018, whether he wished to plead guilty or go to trial.  *Id.*

At the December 3, 2018 pretrial conference, the Court conducted a hearing pursuant to *Missouri. v. Frye*, 566 U.S. 134 (2012), at which time Sumter indicated he understood his options, and the Court extended by several days the deadline for Sumter to decide whether to accept the second plea offer.  ECF No. 95-2.  Following the *Frye* hearing, the Government extended a third plea offer to Sumter.  ECF No. 95 at 4.  The third offer allowed Sumter to plead guilty and receive a stipulated sentence in the range of 168-216 months pursuant to Fed. R. Crim. P. 11(c)(1)(C).  *Id.*  Over the next few days, plea counsel and the Government negotiated changes to the second offer, including reserving a right for Sumter to appeal the enhancement for serious bodily injury or death.  *Id.*

On December 7, 2018, Sumter pled guilty to count one of the indictment pursuant to a written plea agreement which took the form of the revised second offer.  ECF Nos. 95 at 5, 59, 60.  Under the plea agreement, Sumter agreed to plead guilty to count one of the indictment without the enhanced penalties under 21 U.S.C. § 851; he was thus facing possible imprisonment of twenty years to life.  ECF

No. 59. ¶ 1. The plea agreement provided an opportunity for Sumter to earn time off his sentence through cooperation and specifically reserved a right for Sumter to appeal his sentence or raise a post-conviction relief challenge based upon future changes in the law regarding the enhancement for death or serious bodily injury. *Id.* ¶¶ 9, 13.

At the December 7, 2018 hearing, the Court conducted a complete plea colloquy under Fed. R. Crim. P. 11. The Court confirmed plea counsel had explained to Sumter the charge against him, the possible punishments, and Sumter's rights, that plea counsel thought Sumter understood these things, and that plea counsel felt the Government could produce sufficient evidence to meet its burden of proof. ECF No. 95-3 at 5. Plea counsel indicated no mental evaluation had been done for his client and he had no doubts regarding his client's competence. *Id.* at 5-6. The Court then placed Sumter under oath. *Id.* at 6. The Court confirmed with Sumter that he had no impairments impacting his ability to understand what he was doing and he understood he was pleading guilty. *Id.* at 7-8. The Court also confirmed Sumter was fully satisfied with plea counsel's representation. *Id.* at 8-9.

The Court reviewed the sentencing guidelines, relevant conduct, the Court's discretion to vary from the guidelines, and the statutory sentencing factors under 18 U.S.C. § 3553(a). *Id.* at 9-11. The Court explained that parole had been abolished, the basics of supervised release, and the consequences of pleading guilty to a felony. *Id.* at 12-13. The Court spoke about the rights Sumter would have at trial and that Sumter was giving up those rights by pleading guilty. *Id.* at 13-15. Having reviewed all of that, the Court confirmed Sumter was pleading guilty freely and voluntarily, was not being forced to plead, and no one had promised him anything not in the plea agreement to get him to plead guilty. *Id.* at 15-17.

The Court confirmed Sumter had received a copy of the indictment, reviewed it with plea

counsel, and told plea counsel everything he needed to know about the case. *Id.* at 17. The Court reviewed the indictment and the elements of the offense with Sumter; Sumter admitted to each of the elements of the offense. *Id.* at 17-19. The Court also went through the potential penalties for the offense; Sumter stated he understood the possible penalties and had reviewed them with plea counsel. *Id.* at 19-20. The Government summarized the plea agreement and Sumter confirmed he had reviewed the agreement, entered it freely and voluntarily, and understood it. *Id.* at 20-26. The Government withdrew the information it had filed pursuant to 21 U.S.C. § 851. *Id.* at 24.

The Government provided a factual basis for the case. *Id.* at 26-30. According to the Government, the victim contacted a cooperating witness and asked him to help her obtain $100 worth of heroin and cocaine which the witness said he could do via an individual later identified as Sumter. *Id.* at 27. The witness called and texted Sumter regarding the drug deal and took the victim to a location where Sumter provided $100 worth of heroin and cocaine. *Id.* The victim used the drugs, subsequently suffered an overdose, and died. *Id.* at 27-28. Sumter was not present when the victim died; following the victim's death, the cooperating witness disposed of the victim's remains in a remote wooded area, destroyed her cellphone, and took some of her personal effects to another individual who burned them to destroy the evidence. *Id.* at 28.

If the case were to proceed to trial, the Government advanced it would provide a text message recovered from the witness's phone; the message between the witness and Sumter detailed the drug transaction and corroborated phone calls. *Id*. at 28. The cooperating witness would also testify that he had previously served as middleman in drug transactions where he bought drugs from Sumter and then provided the drugs to other individuals. *Id.* at 28-29. Several other witnesses would testify regarding their drug activities with Sumter. One witness would testify that in early 2017. he purchased

4

heroin from Sumter, used the heroin, and suffered an overdose leading to hospitalization. *Id.* at 29.

Following the Government's summary of the facts, Sumter generally agreed with the Government's summary of what he did, admitted to the elements of the offense, and stated he was - in fact - guilty of the offense. *Id.* at 30-31. Sumter's sole objection to the Government's summary was regarding the final potential witness who had purportedly suffered an overdose in early 2017 after using heroin sold by Sumter; Sumter said he knew nothing about that. *Id.* at 30.

The Court found Sumter competent and capable of entering a plea, found his plea was a knowing and voluntary plea with facts to support each of the elements of the offense, and accepted Sumter's guilty plea. *Id.* at 30-31.

Starting in mid-January, 2019, Sumter filed a number of letters asking to withdraw his guilty plea. ECF Nos. 62, 63, 65, 67, 96, 97, 98, 99, 100. On February 11, 2019, the Clerk of Court docketed Sumter's *pro se* motion to substitute attorney. ECF No. 69. On February 12, 2019, plea counsel filed a motion to withdraw Sumter's guilty plea, ECF No. 73, and - upon Sumter's request - filed a motion to substitute attorney, ECF No. 72.

On February 19, 2019, the Magistrate Judge held a hearing on the motions to substitute counsel. ECF No. 80. The Magistrate Judge found plea counsel had not done anything wrong but granted the motions to substitute counsel. ECF Nos. 80, 104 at 11-12.[1] The Court then appointed attorney W. James Hoffmeyer ("post-plea counsel") to represent Sumter. ECF No. 81.

---

1   At the hearing on Sumter's motion to withdraw guilty plea, Sumter's then-counsel moved to admit the transcript of the hearing on the motions to substitute attorney. The Court admitted the transcript of the February 19, 2019 hearing without objection. The transcript was filed under seal. ECF No. 104.

5

On April 18, 2019, the Government filed a response in opposition to Sumter's motion to withdraw guilty plea. ECF No. 95. On May 29, 2019, the Court held a hearing on Sumter's motion to withdraw guilty plea. ECF No. 102. The Court heard argument from the parties, admitted five exhibits,[2] and took the matter under advisement. ECF Nos. 102, 103. Accordingly, this matter is now ripe before the Court.

**Discussion**

**A. Legal Standards**

Rule 11 (formerly Rule 32) of the Federal Rules of Criminal Procedure permits withdrawal of a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). When considering whether to allow a defendant to withdraw a guilty plea, the district court must consider a variety of factors. *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). The *Moore* factors to be considered include:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether the defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Id.*

---

2  The five exhibits were: (1) the autopsy report on the victim (Defendant's exhibit one); (2) a recording of a phone call Sumter placed from jail on the night he pled guilty (Government's exhibit one); (3) the autopsy report on the victim with Bates numbers attached (Government's exhibit two); (4) a recording of a phone call Sumter placed from jail on December 2, 2018 (Government's exhibit three); and (5) a recording of a phone call Sumter placed from jail on December 5, 2018 (Government's exhibit four). ECF No. 103.

Although all the *Moore* factors must be given appropriate weight, the key to determining whether the motion to withdraw a guilty plea should be granted is whether the Rule 11 hearing was properly conducted. *United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir. 1995). "[A]n approrpriately conducted Rule 11 proceeding . . . must be recognized to raise a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992).

**B. Analysis**

When Sumter's letters, the formal motion, and the arguments at the motion hearing are read together, Sumter asserts he was forced/coerced into signing the guilty plea and is not guilty. Sumter claims plea counsel was ineffective. Sumter then advances the delay in filing to withdraw his guilty plea was not excessive, the Government would not be prejudiced if the Court were to grant his motion, and there would be no waste or inconvenience if the motion was granted. The Government asserts all six of the *Moore* factors weigh in favor of holding Sumter to his plea agreement and the Court should thus deny Sumter's motion to withdraw guilty plea. The Court will analyze each of the *Moore* factors in turn.

    **1.       Factor One: Whether Defendant Has Offered Credible Evidence His Plea Was Unknowing or Involuntary.**

Sumter asserts his plea was unknowing or involuntary because: (1) he felt undue pressure to plead guilty; (2) he only saw the autopsy report on the victim five minutes before pleading guilty; and (3) the First Step Act renders his plea unknowing or involuntary. His arguments are unavailing.

Sumter first claims his plea was unknowing or involuntary because he felt undue pressure to plead guilty. *See, e.g.,* ECF No. 65 at 1 ("I feel like I was forced into a plea."). That argument, however, runs counter to Sumter's sworn statements at the plea colloquy. The Court held a thorough

7

Rule 11 colloquy. At the plea hearing, Sumter testified under oath he was pleading guilty freely and voluntarily, no one was forcing him to plead guilty, no one had pressured him or threatened him to cause him to plead guilty, and other than what was in the plea agreement, no one had promised him anything to induce his guilty plea. ECF No. 95-3 at 15-17. In accepting his plea, the Court found Sumter competent and capable of pleading guilty, and held his plea was knowing and voluntary and supported by facts containing the elements of his offense. *Id.* at 32. Sumter's instant claim, which runs counter to his statements at the plea hearing, does not provide credible evidence his plea was unknowing and/or involuntary. *See United States v. Cline*, 286 Fed. App'x. 817, 819 (4th Cir. 2008) (indicating the key to the first *Moore* factor is whether the Court conducted a proper Rule 11 colloquy).

Sumter next advances he only saw the autopsy report on the victim five minutes before he pled guilty and thus did not know there was an issue to be raised under *Burrage v. United States*, 571 U.S. 204 (2014), regarding whether the drugs he allegedly sold were the but-for cause of the victim's death. *See, e.g.,* ECF No. 65 ("I didn't see the autopsy report until five minutes before I [signed] the plea and [the report] did say the cause of death was unknown."). As a result, Sumter argues his plea was unknowing or involuntary.

Sumter's argument regarding when he first saw the autopsy and/or knew there was a *Burrage* argument to be made is refuted by multiple sources. First, the Government argued at the motion hearing that *Burrage* was one of the first issues plea counsel raised in his representation of Sumter, and that the Government provided the autopsy report to plea counsel in October, 2018. In fact, at the *Frye* hearing on December 3, 2018 - several days before Sumter's guilty plea - plea counsel discussed the *Burrage* case in Court with Sumter present. ECF No. 95-2 at 16. The Government also introduced at

8

the motion hearing two phone calls Sumter placed from jail.[3] In the first call, placed on December 2, 2018, five days before Sumter pled guilty, he can be heard discussing the autopsy report. In the second call, placed December 5, 2018, two days before the plea colloquy, Sumter can be heard at various points discussing the autopsy report, the fact the autopsy shows the victim had multiple drugs in her system, and the *Burrage* case. Additionally, and importantly, plea counsel and Sumter reserved in the plea agreement the right to appeal or raise in any post-conviction action "any future changes in the law pertaining to the 'death or serious bodily injury enhancement' set forth in 21 U.S.C. § 841(b)(1)(C)." ECF No. 59 ¶ 13. This enhancement is precisely the one at issue in *Burrage*. The right to appeal or challenge any changes in this enhancement language was negotiated in the days between the December 3, 2018 *Frye* hearing and the December 7, 2018 plea colloquy. ECF No. 95 at 4. The evidence thus shows Sumter knew about the autopsy report and the possibility of making an argument pursuant to *Burrage* well before pleading guilty.

Finally, Sumter argues the First Step Act changed the level of predicate felony which qualifies to enhance the sentence for his crime, and he thus pled guilty assuming his predicate crime qualified for an enhancement when it would not do so under the First Step Act. The Government argues the First Step Act did not modify the language of 21 U.S.C. § 841(b)(1)(C), the section under which Sumter pled guilty.

As a preliminary matter, the Court notes Sumter pled guilty with his original plea counsel on December 7, 2018. The First Step Act was not enacted until December 21, 2018, two weeks after Sumter pled guilty. First Step Act of 2018, Pub. L. No. 115-931, 132 Stat. 5194 (2018). Even if

---

3    The Government presented argument about both phone calls at the motion hearing, and the Court admitted the calls as Government exhibits, ECF No. 103. The Government played the December 2, 2018 phone call at the hearing. It provided the December 5, 2018 phone call and a description of said call to chambers the day following the hearing. ECF Nos. 104, 105.

Sumter had pled guilty after the First Step Act was enacted, however, the Act would not help Sumter because it does not change the felonies which qualify to enhance the sentence for a conviction under 21 U.S.C. § 841(b)(1)(C). *See id.* (increasing the level of drug felonies which qualify as predicate felonies for enhanced sentences under 21 U.S.C. §§ 841(b)(1)(A)-(B), but not impacting 21 U.S.C. §§ 841(b)(1)©- the section under which Sumter pled guilty). While he argued the unfairness or inequity in Congress changing the level of the enhancement drug felonies for 21 U.S.C. §§ 841(b)(1)(A)-(B) but not 21 U.S.C. § 841(b)(1)©, post-plea counsel conceded at the motion hearing that the First Step Act did not modify the language of 21 U.S.C. § 841(b)(1)©. Accordingly, Sumter's argument with regard to the First Step Act fails.

For the foregoing reasons, Sumter has failed to provide credible evidence his guilty plea was unknowing and/or involuntary. Further supporting this finding is the fact that Sumter received and negotiated multiple plea offers. Accordingly, the first *Moore* factor weighs in favor of the Government.

### 2. Factor Two: Whether the Defendant Has Credibly Asserted Legal Innocence

Sumter asserts he is not guilty of the crime to which he pled guilty. The Government contends Sumter's claim fails. The Court agrees with the Government.

Sumter advances he is innocent because he did not commit the crime, was not present when the victim was sold the drugs and did not dispose of the victim's body. *See, e.g.*, ECF No. 96 at 1 (asserting he did not realize that by signing his guilty plea, "I was signing something that says I am responsible for the life of a female that passed away. I didn't sell the female any drugs neither was I there when she passed away and the [witness] . . . dumped her body in the woods, also threw away her cell phone in the river, and burned all the rest of her belongings . . ."). The Government advances Sumter's claim fails because it runs counter to his testimony at the Rule 11 colloquy and a jail call

intercepted the night of the guilty plea. The Government also avers Sumter's arguments are complaints that others involved in the incident are receiving shorter sentences rather than assertions of Sumter's legal innocence.

At the Rule 11 colloquy, the Court reviewed with Sumter the elements and potential penalties of the offense of conspiracy to possess with intent to distribute and to distribute a quantity of cocaine and a quantity of heroin with death and serious bodily injury resulting from the use of such substances. ECF No. 95-3 at 17-20. Sumter admitted to each of the elements of the offense and testified he understood the potential penalties he faced. *Id.* at 19-20. The Government summarized the plea agreement, including Sumter's agreement to plead to the charge the Court had just reviewed; Sumter stated he had reviewed the plea agreement, understood it, and signed it freely and voluntarily. *Id.* at 20-25. The Government detailed the factual basis for the charge, including Sumter providing the drugs involved, the victim using the drugs, and the victim's subsequent death from an overdose. *Id.* at 27-28. Sumter agreed with the Government's summary of what he did and stated he was guilty of the offence; his sole objection to the Government's factual basis was to a witness who claimed to have overdosed after ingesting drugs sold by Sumter at an earlier date. *Id.* at 30-31. Because Sumter asserted under oath at the plea hearing that he understood what he was pleading to and agreed with the Government's summary of what happened, his instant claims he did not commit the offense are not credible assertions of legal innocence.

To the extent Sumter seeks to assert he is innocent and only pled guilty because he was pressured into pleading, that claim fails for the reasons detailed in relation to factor one. Further supporting the idea Sumter was not pressured into pleading guilty is a jail call from the evening of his guilty plea. In this call, introduced by the Government at the motion hearing, Sumter never alleges he

11

was pressured into pleading guilty. For those reasons, factor two weighs towards denying Sumter's motion to withdraw guilty plea.

### 3. Factor Three: Delay Between Entry of Plea and Filing a Motion to Withdraw

Sumter advances there has been no excessive delay in filing to withdraw his guilty plea. The Government disagrees. The Court holds there has been relatively minimal delay here.

Sumter entered his guilty plea on December 7, 2018. ECF No. 60. The first of Sumter's letters seeking to withdraw his guilty plea was filed by the Clerk of Court on January 18, 2019. ECF No. 62. Plea counsel filed a formal motion to withdraw the guilty plea on February 12, 2019. ECF No. 73. Accordingly, the delay between plea and notice of intent to withdraw the guilty plea was approximately five and a half weeks. This delay is relatively minimal. *See Moore*, 931 F.2d at 248 (finding a six week delay before "giving notice of [] intent to move to withdraw" a guilty plea did not weigh in favor of granting defendant's motion to withdraw). This factor thus weighs slightly in favor of granting Sumter's motion. This single factor, however, is insufficient to justify withdrawal of a guilty plea, even when it weighs in favor of defendant, if the remaining factors weigh heavily against granting the motion. *See United States v. Ubakanma*, 215 F.3d 421, 425 (4th Cir. 2000).

### 4. Factor Four: Did Defendant Have the Close Assistance of Competent Counsel?

Sumter maintains plea counsel was ineffective in his representation and coerced Sumter into pleading guilty. The Government advances Sumter had the close assistance of competent counsel.

To prevail on this factor, the defendant must demonstrate that "(1) that his counsel's performance 'fell below an objective standard of reasonableness' and (2) that he was prejudiced in the sense that 'there [was] a reasonable probability that, but for counsel's error, he would not have pleaded

guilty and would have insisted on going to trial.'" *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir. 1989) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985)). Under this standard, the court's inquiry is limited to whether the defendant's counsel "was reasonable 'under prevailing professional norms,' and in light of the circumstances." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill*, 474 U.S. at 57-59 (holding that the two-part *Strickland* test applies to motions to withdraw guilty pleas based on ineffective assistance of counsel).

Here, Sumter is unable to meet either part of the *Strickland* test. First, he cannot show plea counsel's assistance fell outside the "wide range of reasonable professional assistance" considered acceptable. *Strickland*, 466 U.S. at 689. Further, Sumter's assertion plea counsel's performance was deficient runs counter to Sumter's statements at the plea colloquy and to the earlier finding of this Court plea counsel had done nothing wrong. At his plea hearing, Sumter testified under oath plea counsel had done everything he should have or could have done, had not failed to do anything Sumter asked him to do, there was nothing further Sumter wanted plea counsel to do before he pled guilty, he was fully satisfied with plea counsel's services, and he had no complaint about plea counsel. ECF No. 95-3 at 8-9. To the extent Sumter claims plea counsel pressured him into pleading guilty, that likewise runs counter to Sumter's sworn statements at the plea hearing. *Id.* at 15-17 (stating Sumter was pleading guilty freely and voluntarily and was not pleading guilty due to pressure, threat, force, or promise beyond what was in the plea agreement). Having sworn at the plea colloquy he was fully satisfied with plea counsel's performance and was not pressured or coerced into pleading guilty, Sumter may not now allege plea counsel's performance was deficient. The Court further notes, in deciding the motions to substitute counsel, the Magistrate Judge found no evidence plea counsel had performed deficiently and simply exercised his discretion and appointed Sumter new counsel. ECF No. 104 at 11. Sumter is thus

13

unable to meet the first prong of *Strickland*.

Even if Sumter could show defense counsel's performance was deficient, there is not a reasonable probability that but for counsel's performance, Sumter would have insisted on proceeding to trial. As noted above, absent the plea agreement, Sumter faced a mandatory life sentence if convicted of the charge in the indictment with the enhancement under 21 U.S.C. § 851. Thus, proceeding to trial rather than accepting a twenty years to life sentence range with the opportunity to earn time off for cooperating would have been unreasonable. Accordingly, Sumter fails to meet the second prong of *Strickland*. Because Sumter is unable to meet either prong of *Strickland*, this factor weighs in favor of the Government.

### 5. Factor Five: Will Withdrawal Prejudice the Government?

Sumter argues the withdrawal of his guilty plea will not prejudice the Government. The Government counters that because there was a delay between the entry of the guilty plea and the motion to withdraw the guilty plea, it would be prejudiced if the Court allows Sumter to withdraw his plea. Specifically, the Government advances the passage of time may have led to the fading of witness memories in the approximately one and a half years that have passed since the incident at issue.

The Court agrees: the Government would be prejudiced by allowing Sumter to withdraw his guilty plea. The Government would have to prepare for trial after having negotiated multiple plea offers with Sumter, extended him a plea offer he ultimately accepted, and participated in a *Frye* hearing and a lengthy plea colloquy with Sumter. That prejudice, however, would likely not be great given the relatively short amount of time which elapsed between the plea hearing and Sumter filing his letters and his motion to withdraw guilty plea. As a result, this factor is neutral between the parties.

### 6. Factor Six: Will Withdrawal Inconvenience the Court and Waste Judicial Resources?

14

Sumter argues there would be no inconvenience or waste stemming from allowing him to withdraw his plea. The Government contends withdrawal of the plea would inconvenience the Court and waste judicial resources. The Court agrees with the Government.

The Court first notes it has already spent a significant amount of time adjudicating Sumter's case, including both a *Frye* hearing and a thorough Rule 11 colloquy. At his plea hearing, Sumter admitted his guilt under oath multiple times. *See, generally,* ECF No. 95-3. In light of those admissions, allowing Sumter to withdraw his guilty plea would be a waste of judicial resources. *See United States v. Nicholson*, 676 F.3d 376, 384 (4th Cir. 2012) ("As to the sixth [*Moore*] factor, we agree with the district court that a trial in this case would be a waste of judicial resources and time, particularly given Nicholson's repeated admission of guilt."). Accordingly, this factor weighs in favor of the Government.

In summary, four of the *Moore* factors (involuntariness of the plea, innocence, competence of counsel, and inconvenience to the Court) support the denial of Sumter's motion to withdraw guilty plea. One of the factors (prejudice to the Government) is neutral between the parties. The final *Moore* factor (delay in moving to withdraw) leans slightly in favor of granting Sumter's motion. That single factor, however, is an insufficient basis upon which to grant Sumter's motion where, as here, the remaining factors weigh in favor of denying the motion. Further, while all the *Moore* factors are important, the key to deciding whether a motion to withdraw guilty plea should be granted is whether a proper plea colloquy was conducted.. *Puckett*, 61 F.3d at 1099; *Lambey*, 974 F.2d at 1394. The Court here held a complete plea colloquy.

## Conclusion

Because the Court held a thorough, proper Rule 11 colloquy in Sumter's case, and because a majority of the *Moore* factors weigh in favor of the Government, Sumter has failed to show "a fair and just reason" supports his request for withdrawal as required under Fed. R. Crim. P.11(d)(2)(B). Accordingly, the Court **DENIES** Sumter's motion to withdraw guilty plea. ECF No. 73. Sumter's counsel is **DIRECTED** to file objections - if any - to the Presentence Investigation Report in this case within ten (10) days of the date of entry of this Order.

**IT IS SO ORDERED.**

Florence, South Carolina  
June 27, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
Chief United States District Judge